## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

JERRY BAIN and JENNIFER BAIN,     )
                                   )
            Plaintiffs,      )
                                   )
vs.                       )
                                 )    Case No._____
CONTINENTAL TITLE HOLDING     )
COMPANY, INC., FNBK CORPORATE  )
HOLDINGS, LLC, PLATINUM REALTY, LLC  )
and KATHRYN SYLVIA COLEMAN,    )
                                 )
            Defendants,   )

## COMPLAINT

Plaintiffs Jerry Bain and Jennifer Bain, by and through undersigned counsel, for their causes of action against defendants Continental Title Holding Company, Inc., FNBK Corporate Holdings, LLC, Platinum Realty, LLC and Kathryn Sylvia Coleman, state and allege as follows:

## PARTIES

1.  Plaintiffs Jerry and Jennifer Bain are husband and wife and are citizens and residents of Kansas.

2.  Defendant Continental Title Holding Company, Inc. (hereinafter "Continental Title") is a Missouri corporation registered to do business in Kanas with its principal place of business located at 8455 College Blvd., Overland Park, KS 66210.

3.  Continental Title's registered agent for service of process in Kansas is Corporation Registration Services, Inc., 9393 W. 110th Street, Suite 200, Overland Park, KS 66210.

1

4.      At all times relevant Continental Title, through its employees and agents, actual, apparent or otherwise, operated, managed, maintained and controlled Continental Title located at 8455 College Blvd., Overland Park, KS 66210 and Continental Title located at 13571 S. Mur Len Rd, Olathe, KS 66062.

5.      All actions and omissions of Continental Title's employees and agents, actual, apparent or otherwise, as described herein, were performed within the scope of their duties as employees and agents of Continental Title and Continental Title is vicariously liable for the acts and/or omissions of its employees and agents, actual, apparent or otherwise.

6.      Defendant FNBK Corporate Holdings, LLC (hereinafter "First National Bank") is a Kansas limited liability company with its principal place of business located at 4650 College Blvd., Overland Park, KS 66211.

7.      First National Bank's registered agent for service of process in Kansas is CT Corporation System, 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

8.      At all times relevant First National Bank was a wholly owned subsidiary of First National Bank of Omaha located at 1620 Dodge Street, Suite 3720, Omaha, NE 68197.  First National Bank through its employees and agents, actual, apparent or otherwise, operated, managed, maintained and controlled several First National Bank branches located in and around the Kansas City Metropolitan area including First National Bank, 4650 College Blvd., Overland Park, KS 66211.

9.      All actions and omissions of First National Bank's employees and agents, actual, apparent or otherwise, as described herein, were performed within the scope of

2

their duties as employees and agents of First National Bank and First National Bank is vicariously liable for the acts and/or omissions of its employees and agents, actual, apparent or otherwise.

10.    Defendant Platinum Realty, LLC (hereinafter "Platinum Realty") is a Kansas limited liability company with its principal place of business located at 9393 W. 110th Street, Suite 170, Overland Park, KS 66210.

11.    Platinum Realty's registered agent for service of process in Kansas is Platinum Realty, LLC, 9393 W. 110th Street, Suite 170, Overland Park, KS 66210.

12.    All actions and omissions of Platinum Realty's employees and agents, actual, apparent or otherwise, as described herein, were performed within the scope of their duties as employees and agents of Platinum Realty and Platinum Realty is vicariously liable for the acts and/or omissions of its employees and agents, actual, apparent or otherwise.

13.    Defendant Kathryn Sylvia Coleman (hereinafter "Sylvia") is citizen and resident of Missouri residing at 8229 Barrybrooke Court, Kansas City, MO 64151-1086.

14.    At all times relevant Sylvia was an agent and/or employee of Platinum Realty and Platinum Realty is vicariously liable for her acts and omissions as described herein.

15.    At all times relevant Sylvia was a real estate agent licensed by the Kansas and Missouri Real Estate Commissions.

## JURISDICTION & VENUE

16.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. §

1367 because they are related to plaintiffs' federal claims and form part of the same case or controversy.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (3) because a substantial part of the acts and omissions giving rise to plaintiffs' claims occurred in Kansas and defendants are subject to personal jurisdiction in Kansas.

## FACTUAL ALLEGATIONS

18.     On or about February 2, 2016, plaintiff Jerry Bain and First National Bank entered into a Consumer Pledge Agreement whereby plaintiff obtained a $200,000.00 line of credit to purchase a home (hereinafter "Plaintiffs' Account").

19.     In February of 2016, plaintiffs entered into a contract to purchase a house located at 7339 North West Richmond Ave., Kansas City, MO  64158 (hereinafter the "Property").

20.     At all times relevant Sylvia was the real estate agent for the sellers of the Property.

21.     At all times relevant Continental Title was the escrow agent and closing company for purchase of the Property.

22.     At all times relevant Continental Title, First National Bank, Platinum Realty and Sylvia were in a fiduciary relationship with plaintiffs and obtained confidential, personal and private information about plaintiffs related their purchase of the Property.  All defendants had a legal and fiduciary duty to maintain the confidentiality of plaintiffs' nonpublic information (hereinafter "NPI") and to exercise the utmost care to ensure no persons or entities obtained plaintiffs' NPI.

23.     On or about February 16, 2016, Brenda Williams of Continental Title sent Sylvia an unencrypted email containing the HUD-1 settlement statement and the instructions for wiring the funds due and owing on the Property.

24.     At all times relevant Continental Title and Brenda Williams had the means and ability to encrypt the email Ms. Williams sent to Sylvia.   If Continental Title and/or Ms. Williams had encrypted the email Ms. Williams email sent to Sylvia all of the damages sustained by plaintiffs as alleged herein would have been avoided.

25.     On or about February 16, 2016, an unknown person intercepted Ms. Williams' unencrypted email to Sylvia, changed the wiring instructions to an unknown person's bank account, created an email address almost identical to Ms. Williams' Continental Title email address, pasted Ms. Williams' signature block and Continental Title's logo into the email and sent the fabricated email and wiring instructions to Sylvia in Missouri.

26.     On or about February 16, 2016, Sylvia received the hacker's fabricated email and, without reading the fabricated wiring instructions, forwarded it to plaintiffs in Kansas. Sylvia represented to plaintiffs that the HUD-1 and the fraudulent wiring instructions attached to her email were from Continental Title and that they were true and accurate.

27.     If Sylvia and/or Platinum Realty had read the hacker's fabricated email address which purported to be Ms. Williams' email address and/or if Sylvia and/or Platinum Realty had read the fraudulent wiring instructions, they would have known that the wiring instructions were fraudulent and all of the damages sustained by plaintiffs as alleged herein would have been avoided.

28.     Plaintiffs were unaware of and had no way of knowing that the email Sylvia sent them was not from Continental Title and had instead been intercepted and contained fraudulent wiring instructions.

29.     Believing Sylvia's representation that her email was from Continental Title, plaintiffs sent Sylvia's email and the fabricated wiring instructions to First National Bank and asked the bank to follow Sylvia's wiring instructions.

30.     Upon receipt of Sylvia's email from plaintiffs and without taking any steps to verify the accuracy of the wiring instructions, First National Bank wired the settlement funds ($196,622.76) from Plaintiffs' Account to the hacker's account at Citi Bank (Account Number 499 813 7913) (hereinafter the "Fraudulent Transfer").

31.     The Fraudulent Transfer was facilitated by First National Bank's negligent, reckless and/or intentional failure to maintain and/or exercise adequate security and monitoring procedures of Plaintiffs' Account and First National Bank's negligent, reckless and/or intentional failure to abide by its contractual, statutory, common law and/or fiduciary obligations to plaintiffs.

32.     Upon First National Bank's receipt of Sylvia's email, First National Bank failed:

     a.      to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to alert plaintiffs about the Fraudulent Transfer;

     b.      to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to obtain the verified approval of plaintiffs, prior to First National Bank facilitating the Fraudulent Transfer; and

c.      to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to require that plaintiffs answer security questions or otherwise verify, authenticate, or confirm plaintiffs' identity, as well as verify, authenticate, or confirm that plaintiffs had made and/or authorized the Fraudulent Transfer.

33.     First National Bank knew or should have known that the wiring instructions were unauthorized, suspicious, forged, fraudulent, wrongful, did not conform with First National Bank's policies, regulations, and rules, or the commercially reasonable or commercially accepted security procedures of the banking industry.

34.     Plaintiffs and their attorneys have requested information and documents relating to the Fraudulent Transfer from First National Bank but First National Bank and its attorneys have refused to provide the requested information and documents relating to the Fraudulent Transfer.

35.     The Fraudulent Transfer was made without plaintiffs' knowledge or consent, and occurred as a proximate result of Continental Title, Platinum Realty, First National Bank and/or Sylvia's misconduct, recklessness, negligence, unlawful actions, wrongful conduct, intentional conduct, breach of fiduciary duties, and/or failure to comply with commercially reasonable and/or commercially accepted security procedures.

36.     First National Bank has failed to conduct a timely and reasonable investigation into the Fraudulent Transfer and has failed to reimburse plaintiffs for the Fraudulent Transfer.

37.     All defendants knew years before the Fraudulent Transfer that the same or similar cyber fraud described herein had been perpetrated on numerous innocent consumers throughout the United States.   Despite such knowledge and despite

7

defendants' realization of the imminent dangers of the cyber fraud, defendants recklessly disregarded the known and probable consequences.

## COUNT I – VIOLATIONS OF TRUTH IN LENDING ACT
### (Against First National Bank)

Plaintiffs, for Count I of their cause of action against First National Bank, state and allege as follows:

38.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39.     Pursuant to 15 U.S.C. § 1640(a), First National Bank is liable to plaintiffs for its violations of the Truth in Lending Act ("TILA").

40.     First National Bank is liable to plaintiffs for advising them that they were responsible to pay the full amount of the Fraudulent Transfer from the Plaintiffs' Account and by billing plaintiffs for the same in violation of 15 U.S.C. § 1643.

41.     First National Bank is liable to plaintiffs for demanding that plaintiffs make payments for the interest on the full amount of the Fraudulent Transfer from Plaintiff's Account in violation of 12 C.F.R. § 226(d)(1).

42.     First National Bank is liable to plaintiffs for attempting to collect from plaintiffs any portion, or interest thereon, of the funds that were fraudulently transferred from Plaintiffs' Account in violation of 12 C.F.R. § 226(d)(1).

43.     First National Bank is liable to plaintiffs for failing to reasonably investigate and correct the Fraudulent Transfer from the Plaintiffs' Account in violation of 15 U.S.C. § 1666.

44.     First National Bank is liable to plaintiffs because First National Bank knew the Fraudulent Transfer was unauthorized and plaintiffs disputed the balance which is a violation of 15 U.S.C. § 1666a and 12 C.F.R. § 226.13(d)(2).

45.     As a direct and proximate result of First National Bank's violations of the TILA, plaintiffs sustained damages in excess of $200,000.00 and First National Bank is liable to plaintiffs for the full amount of statutory and actual damages along with the attorneys' fees and the costs of this litigation, as well as such further relief as may be permitted by law.

WHEREFORE, plaintiffs pray for Judgment on Count I of their claim against First National Bank for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by First National Bank's violations of the TILA; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of First National Bank's violation of the TILA; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

### COUNT II – VIOLATIONS OF ELECTRONIC FUNDS TRANSFER ACT
### (Against First National Bank)

Plaintiffs, for Count II of their cause of action against First National Bank, state and allege as follows:

46.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 45 of this Complaint as though fully set forth herein.

47.     Plaintiffs are both "consumers" as that term is used in 15 U.S.C. § 1693(a)(5) of the Electronic Funds Transfer Act ("EFTA").

48.     First National Bank is a "financial institution" as that term is used in 15 U.S.C. § 1693(a)(8).

49.     Plaintiffs' Account is an "account" as that term is used in 15 U.S.C. § 1693(a)(2).

50.     The Fraudulent Transfer is an "unauthorized electronic transfer" as that phrase is used and defined in 15 U.S.C. § 1693(a)(11).

51.     First National Bank violated its obligations under the EFTA by failing to provide plaintiffs with the disclosures and notices required under that Act and under Regulation E.

52.     First National Bank violated its obligations under the EFTA by failing to perform a good faith investigation into the Fraudulent Transfer and by failing to provide plaintiffs with the results of the investigation within ten (10) business days in violation of 15 U.S.C. § 1693f(a).

53.     First National Bank violated its obligations under the EFTA by failing to correct the account errors caused by the Fraudulent Transfer in violation of 15 U.S.C. § 1693f(b).

54.     First National Bank unlawfully, recklessly, negligently, and/or willfully denied plaintiffs the protections set forth in Regulation E including, but not limited to, the limitations on consumer liability set forth in 12 C.F.R. § 205.6.

55.     Pursuant to 15 U.S.C. § 1693g, plaintiffs' maximum liability for the Fraudulent Transfer is Fifty Dollars ($50.00).

56. First National Bank has demanded payment of $196,622.76 plus interest from plaintiffs as a result of the Fraudulent Transfer which is well in excess of plaintiffs' maximum liability and which demand is in violation of 15 U.S.C. § 1693g.

57. First National Bank has and continues to willfully violate the EFTA and Regulation E and First National Bank is liable to plaintiffs for a declaratory judgment that First National Bank's conduct violated the EFTA.

58. As a direct and proximate result of First National Bank's violations of the EFTA, plaintiffs sustained damages in excess of $200,000.00 and First National Bank is liable to plaintiffs for the full amount of statutory and actual damages along with the attorneys' fees and the costs of this litigation, as well as such further relief as may be permitted by law.

WHEREFORE, plaintiffs pray for Judgment on Count II of their claim against First National Bank for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by First National Bank's violations of the EFTA; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of First National Bank's violation of the EFTA; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT III – VIOLATIONS OF FAIR CREDIT REPORTING ACT
### (Against First National Bank)

Plaintiffs, for Count III of their cause of action against First National Bank, state and allege as follows:

59.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 58 of this Complaint as though fully set forth herein.

60.     At all times relevant plaintiffs were each a "person" as that term is defined by U.S.C. § 1681a(b).

61.     First National Bank violated its obligations under the Fair Credit Reporting Act ("FCRA") by willfully and negligently failing to conduct an investigation into the Fraudulent Transfer.

62.     First National Bank violated its obligations under the FCRA by willfully and negligently failing to review all relevant information concerning Plaintiffs' Account.

63.     First National Bank violated its obligations under the FCRA by willfully and negligently failing to report the findings of its investigation into the Fraudulent Transfer to all credit reporting agencies.

64.     First National Bank violated its obligations under the FCRA by willfully and negligently failing to provide all credit reporting agencies with the factual information and evidence that plaintiffs submitted to First National Bank which proves that any information contained in plaintiffs' credit reports concerning the Fraudulent Transfer is inaccurate.

65.     First National Bank violated its obligations under the FCRA by willfully and negligently continuing to disseminate inaccurate and derogatory credit, account and other information concerning plaintiffs to all credit reporting agencies.

12

66.     First National Bank violated its obligations under the FCRA by willfully and negligently failing to comply with the requirements imposed on furnishers of information pursuant to U.S.C. § 1681s-2(b).

67.     First National Bank informed plaintiffs that if they failed to pay for the funds wrongfully and fraudulently wired from Plaintiffs' Account as a result of the Fraudulent Transfer, First National Bank would report any late payments to the credit bureaus causing further harm to plaintiffs.

68.     As a direct and proximate result of First National Bank's violations of the FCRA, plaintiffs sustained damages in excess of $200,000.00 and First National Bank is liable to plaintiffs for the full amount of statutory and actual damages along with the attorneys' fees and the costs of this litigation, as well as such further relief as may be permitted by law.

WHEREFORE, plaintiffs pray for Judgment on Count III of their claim against First National Bank for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by First National Bank's violations of the FCRA; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of First National Bank's violation of the FCRA; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

## COUNT IV – NEGLIGENCE – GROSS NEGLIGENCE
### (Against First National Bank)

Plaintiffs, for Count IV of their cause of action against First National Bank, state and allege as follows:

69.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 68 of this Complaint as though fully set forth herein.

70.     First National Bank owed a duty to plaintiffs to use reasonable care in obtaining, reading, analyzing, verifying and using the wiring instructions and in wiring money from Plaintiffs' Account for purchase of the Property.

71.     First National Bank was careless, negligent and/or grossly negligent in several material respects including but not limited to:

      a.     failing to observe that the wiring instructions were fabricated;

      b.     failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to alert the plaintiffs about the Fraudulent Transfer;

      c.     failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to obtain the verified approval of plaintiffs, prior to First National Bank facilitating the Fraudulent Transfer; and

      d.     failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to require that plaintiffs answer security questions or otherwise verify, authenticate, or confirm plaintiffs' identity, as well as verify, authenticate, or confirm that plaintiffs had made and/or authorized the Fraudulent Transfer.

      e.     wiring plaintiffs' funds to an unknown person for purchase of the Property without plaintiffs' knowledge or consent.

14

72.     As a direct and proximate result of First National Bank's negligence and gross negligence, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count IV of their claim against First National Bank for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by First National Bank's negligence and/or gross negligence; for punitive damages as warranted by the evidence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of First National Bank's negligence and/or gross negligence; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT V – UNJUST ENRICHMENT
### (Against First National Bank)

Plaintiffs, for Count V of their cause of action against First National Bank, state and allege as follows:

73.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 72 of this Complaint as though fully set forth herein.

74.     First National Bank has benefitted from plaintiffs establishing and maintaining Plaintiffs' Account.

75.     First National Bank has benefitted from the proceeds derived from the alleged obligations caused by the Fraudulent Transfer by requiring plaintiffs to make payments to First National Bank for the amounts wrongfully and fraudulently taken through the Fraudulent Transfer, including alleged principal, interest and late payments.

76.     First National Bank has and will benefit from its demand upon plaintiffs for the alleged obligations caused by the Fraudulent Transfer.

77.     First National Bank has failed and refused and continues to fail and refuse to acknowledge that plaintiffs have no liability to First National for the amounts wrongfully and fraudulently taken through the Fraudulent Transfer.

78.     First National Bank should not benefit from the aforementioned proceeds derived from the alleged obligations caused by the Fraudulent Transfer.

79.     First National Bank will continue to benefit through the alleged obligations caused by the Fraudulent Transfers, which presents circumstances which would make it unjust to permit First National to benefit from the alleged obligations caused by Fraudulent Transfer.

80.     First National Bank has been unjustly enriched and injustice can only be avoided by ordering payment for damages by First National Bank to plaintiffs for the full amount of statutory and actual damages, along with the attorneys' fees and the costs of litigation, as well as such further relief as may be permitted by law.

81.     As a direct and proximate result of First National Bank's wrongful conduct, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count V of their claim against First National Bank for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by First National Bank's unjust enrichment; for punitive damages as warranted by the evidence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of First

National Bank's unjust enrichment; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT VI – NEGLIGENCE – GROSS NEGLIGENCE
### (Against Continental Title)

Plaintiffs, for Count VI of their cause of action against Continental Title, state and allege as follows:

82.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83.     For years prior to the cyber fraud and Fraudulent Transfer described herein, Continental Title was a member of the American Land Title Association ("ALTA") which is the national trade association and voice of the abstract and title insurance industry.

84.     For years prior to the cyber fraud and Fraudulent Transfer described herein, Continental Title received from ALTA and others newsletters, emails, alerts, warnings, documents and other materials describing the same or similar cyber fraud described herein and how to prevent the cyber fraud described herein by among other things ensuring that all emails from Continental Title containing NPI were encrypted before being sent to customers, buyers, sellers, real estate agents, banks and others involved in the purchase and/or sale of real property.

85.     Continental Title owed a duty to plaintiffs to use reasonable care in obtaining, sending and disclosing plaintiffs' personal information, plaintiffs' banking information, plaintiffs' NPI and other information relating to the purchase of the Property.

86.     Continental Title was careless, negligent and grossly negligent by sending an unencrypted email to Sylvia with the HUD-1 and wiring instructions.

87.     Continental Title's failure to encrypt the email it sent to Sylvia allowed a hacker to intercept the email and fabricate the wiring instructions which caused the Fraudulent Transfer.

88.     As a direct and proximate result of Continental Title's negligence and gross negligence, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count VI of their claim against Continental Title for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by Continental Title's negligence and gross negligence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of Continental Title's negligence and gross negligence; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

## COUNT VII – VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (Against Continental Title)

Plaintiffs, for Count VII of their cause of action against Continental Title, state and allege as follows:

89.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 88 of this Complaint as though fully set forth herein.

90.     Plaintiffs are "consumers" within the meaning of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.* (hereinafter "KCPA").

18

91.     Continental Title is a "supplier" within the meaning of the KCPA.

92.     The "services" Continental Titled provided to plaintiffs are encompassed within the meaning of the KCPA.

93.     Continental Title held itself out to plaintiffs as "providing outstanding search, examination, and closing services for the real estate industry."  It represented to plaintiffs that it focused on "security with each and every transaction."

94.     Continental Title represented to plaintiffs that all information plaintiffs provided to it would be kept confidential, secured and would not be disclosed to any persons or entities without plaintiffs' permission.

95.     Continental Title's violated the KCPA and engaged in deceptive acts and practices in connection with a consumer transaction which include but are not limited to the following:

   a.     Failing to inform plaintiffs that the information plaintiffs provided to Continental Title would not be kept confidential, secured, encrypted and would not disclosed to any persons or entities without plaintiffs' permission.

   b.     Representing to plaintiffs that Continental Title would ensure all information plaintiffs provided to Continental Title would be kept confidential, secure, encrypted and not disclosed to any persons or entities without plaintiffs' permission.

   c.     Misleading plaintiffs about its practices and abilities of sending encrypted communications containing plaintiffs' confidential information.

   d.     Failing to disclose material facts to plaintiffs about Continental Title's practice of not encrypting emails containing plaintiffs' confidential and personal information.

96.     The aforesaid acts and omissions constitute deceptive acts and practices in violation of the KCPA.

97.     As a direct and proximate result of Continental Title's violations of the KCPA, plaintiffs suffered damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for judgment on Count VII of their cause of action against Continental Title for a sum to be determined by the Court in accordance with the KCPA; for their costs, expenses and attorneys' fees in bringing this action as provided for in the KCPA; for civil penalties as provided for in the KCPA; and for such other relief as plaintiffs may be entitled to by law or as the Court deems just and proper.

### COUNT VIII – NEGLIGENCE – GROSS NEGLIGENCE
### (Against Platinum Realty and Kathryn Sylvia Coleman)

Plaintiffs, for Count VIII of their cause of action against Platinum Realty and Sylvia, state and allege as follows:

98.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 97 of this Complaint as though fully set forth herein.

99.     For years prior to the cyber fraud and Fraudulent Transfer described herein, Platinum Realty and Sylvia were members of the National Association of Realtors ("NAR") which is the national trade association and voice of real estate brokers and real estate agents in the United States.

100.     For years prior to the cyber fraud and Fraudulent Transfer described herein, Platinum Realty and Sylvia received from NAR and others newsletters, emails, alerts, warnings, documents and other materials describing the same or similar cyber fraud described herein and how to prevent the cyber fraud described herein by among other things: (a) never using an unsecured email address such as a Yahoo.com email address;

20

(b) never accepting an unencrypted email containing wiring instructions; and (c) never forwarding or sending an unencrypted email containing wiring instructions.

101. Platinum Realty and Sylvia owed a duty to plaintiffs to use reasonable care in obtaining, evaluating, reading, sending and disclosing plaintiffs' personal information, plaintiffs' banking information, plaintiffs' NPI and other information relating to the purchase of the Property.

102. Platinum Realty and Sylvia were careless, negligent and grossly negligent in several material respects including but not limited to:

     a. Using an unsecured Yahoo email address to send and receive plaintiffs' confidential financial, banking and personal information.

     b. Failing to read the fabricated wiring instructions to ensure they were accurate which would have prevented the Fraudulent Transfer.

     c. Forwarding the email to plaintiffs without encrypting it and without ensuring the wiring instructions were accurate and truthful.

     d. Representing to plaintiffs that the wiring instructions were from Continental Title and were true and accurate.

103. As a direct and proximate result of Platinum Realty and Sylvia's negligence and gross negligence, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count VIII of their claim against Platinum Realty and Sylvia for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by Platinum Realty and Sylvia's negligence and gross negligence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of Platinum Realty and Sylvia's negligence and gross

negligence; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

## COUNT VIII – NEGLIGENT MISREPRESENTATION
### (Against Platinum Realty and Sylvia)

Plaintiffs, for Count VIII of their causes of action against Platinum Realty and Sylvia, state and allege as follows:

104.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 103 of this Complaint as though fully set forth herein.

105.    Platinum Realty and Sylvia owed a duty to plaintiffs to use reasonable care in obtaining, receiving, evaluating, reading, sending and disclosing material information to plaintiffs about where to wire the funds for the purchase of the Property.

106.    Platinum Realty and Sylvia, in the course of their businesses, professions and employment in which they had a pecuniary interest, negligently supplied false and/or incorrect information to plaintiffs about where to wire the funds for purchasing the Property.

107.    Plaintiffs justifiably relied on Platinum Realty and Sylvia's negligent misrepresentations and/or false information about where to wire the funds for purchase of the Property.

108.    Plaintiffs were within the group of persons for whose benefit and guidance Platinum Realty and Sylvia supplied information about where to wire the funds to purchase the Property and Platinum Realty and Sylvia intended plaintiffs to rely on the information they sent plaintiffs about where to wire the funds to purchase the Property.

109.    Platinum Realty and Sylvia breached their duty of care to plaintiffs by negligently supplying false and/or incorrect information to plaintiffs about where to wire the funds for purchase of the Property.

110.    If plaintiffs had been apprised of all material information about where to wire the funds to purchase the Property, the Fraudulent Transfer would have been prevented.

111.    As a direct and proximate result of Platinum Realty and Sylvia's negligent misrepresentations, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count VIII of their claim against Platinum Realty and Sylvia for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages sustained because of Platinum Realty and Sylvia's negligent misrepresentations; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of Platinum Realty and Sylvia's negligent misrepresentations; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT IX – BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

Plaintiffs, for Count IX of their cause of action against all defendants, state and allege as follows:

112.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 111 of this Complaint as though fully set forth herein.

113.    Plaintiffs placed their trust and confidence in all defendants based upon defendants' expertise, experience and representations.

114.    Defendants knew that plaintiffs were placing their trust and confidence in them based upon their expertise, experience and representations.

115.    Defendants had a duty to establish security protocols and procedures to protect the safety and security of plaintiffs' NPI and to prevent the Fraudulent Transfer.

116.    Plaintiffs relied on defendants to maintain and establish security protocols and procedures to protect the safety and security of plaintiffs' NPI and to prevent the Fraudulent Transfer.

117.    The trust and confidence placed upon defendants by plaintiffs created a fiduciary relationship between defendants and plaintiffs.

118.    As a result of the fiduciary relationship between defendants and plaintiffs, defendants owed plaintiffs a fiduciary duty to maintain and protect plaintiffs' NPI and to prevent the Fraudulent Transfer.

119.    Defendants breached their fiduciary duties to plaintiffs by failing to establish and maintain commercially accepted security protocols and procedures to prevent the Fraudulent Transfer which directly caused or directly contributed to cause the Fraudulent Transfer.

120.    Defendants breached their fiduciary duties to plaintiffs by refusing to reimburse plaintiffs for the amount wrongfully and fraudulently taken from Plaintiffs' Account.

WHEREFORE, plaintiffs pray for Judgment on Count IX of their claims against all defendants for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages sustained because of defendants' breaches of their respective fiduciary duties; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of defendants' breaches of their respective fiduciary duties; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury in the above-captioned case.

HAMILTON LAW FIRM LLC


By:/s/ Patrick A. Hamilton
Patrick A. Hamilton, KS Bar No. 16154
13420 Santa Fe Trail Drive
Lenexa, KS 66215
PHONE: (913) 888-7100
FAX: (913) 888-7388
patrick@lenexalaw.com
ATTORNEY FOR PLAINTIFFS