**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| JERRY BAIN and JENNIFER BAIN, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | Case No. 16-CV-02326 |
| CONTINENTAL TITLE HOLDING | ) | |
| COMPANY, INC., FIRST NATIONAL BANK | ) | |
| OF OMAHA, INC., PLATINUM REALTY, LLC | ) | |
| and KATHRYN SYLVIA COLEMAN, | ) | |
| | ) | |
| Defendants, | ) | |

**FIRST AMENDED COMPLAINT**

Plaintiffs Jerry Bain and Jennifer Bain, by and through undersigned counsel, for their causes of action against defendants Continental Title Holding Company, Inc., First National Bank of Omaha, Inc., Platinum Realty, LLC and Kathryn Sylvia Coleman, state and allege as follows:

**PARTIES**

1.      Plaintiffs Jerry and Jennifer Bain are husband and wife and are citizens and residents of Kansas.

2.      Defendant Continental Title Holding Company, Inc. (hereinafter "Continental Title") is a Missouri corporation registered to do business in Kanas with its principal place of business located at 8455 College Blvd., Overland Park, KS 66210.

3.      Continental Title's registered agent for service of process in Kansas is Corporation Registration Services, Inc., 9393 W. 110th Street, Suite 200, Overland Park, KS 66210.

1

4.     At all times relevant Continental Title, through its employees and agents, actual, apparent or otherwise, operated, managed, maintained and controlled Continental Title located at 8455 College Blvd., Overland Park, KS 66210 and Continental Title located at 13571 S. Mur Len Rd, Olathe, KS 66062.

5.     All actions and omissions of Continental Title's employees and agents, actual, apparent or otherwise, as described herein, were performed within the scope of their duties as employees and agents of Continental Title and Continental Title is vicariously liable for the acts and/or omissions of its employees and agents, actual, apparent or otherwise.

6.     Defendant First National Bank of Omaha, Inc. (hereinafter "FNBO") is a Kansas limited liability company with its principal place of business located at 4650 College Blvd., Overland Park, KS 66211.

7.     FNBO's registered agent for service of process in Kansas is CT Corporation System, 112 SW 7th Street, Suite 3C, Topeka, KS 66603.

8.     FNBO, through its employees and agents, actual, apparent or otherwise, operated, managed, maintained and controlled several FNBO's branches located in and around the Kansas City Metropolitan area including FNBO, 4650 College Blvd., Overland Park, KS 66211.

9.     All actions and omissions of FNBO's employees and agents, actual, apparent or otherwise, as described herein, were performed within the scope of their duties as employees and agents of FNBO and FNBO is vicariously liable for the acts and/or omissions of its employees and agents, actual, apparent or otherwise.

2

10.     Defendant Platinum Realty, LLC (hereinafter "Platinum Realty") is a Kansas limited liability company with its principal place of business located at 9393 W. 110th Street, Suite 170, Overland Park, KS 66210.

11.     Platinum Realty's registered agent for service of process in Kansas is Platinum Realty, LLC, 9393 W. 110th Street, Suite 170, Overland Park, KS 66210.

12.     All actions and omissions of Platinum Realty's employees and agents, actual, apparent or otherwise, as described herein, were performed within the scope of their duties as employees and agents of Platinum Realty and Platinum Realty is vicariously liable for the acts and/or omissions of its employees and agents, actual, apparent or otherwise.

13.     Defendant Kathryn Sylvia Coleman (hereinafter "Sylvia") is citizen and resident of Missouri residing at 8229 Barrybrooke Court, Kansas City, MO 64151-1086.

14.     At all times relevant Sylvia was an agent and/or employee of Platinum Realty and Platinum Realty is vicariously liable for her acts and omissions as described herein.

15.     At all times relevant Sylvia was a real estate agent licensed by the Kansas and Missouri Real Estate Commissions.

### JURISDICTION & VENUE

16.     This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1343.  This Court has supplemental jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367 because they are related to plaintiffs' federal claims and form part of the same case or controversy.

17.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(1) and (3) because a substantial part of the acts and omissions giving rise to plaintiffs' claims occurred in Kansas and defendants are subject to personal jurisdiction in Kansas.

## FACTUAL ALLEGATIONS

18.     On or about February 2, 2016, plaintiff Jerry Bain and FNBO entered into a Consumer Pledge Agreement whereby plaintiff obtained a $200,000.00 line of credit to purchase a home (hereinafter "Plaintiffs' Account").

19.     In February of 2016, plaintiffs entered into a contract to purchase a house located at 7339 North West Richmond Ave., Kansas City, MO  64158 (hereinafter the "Property").

20.     At all times relevant Sylvia was the real estate agent for the sellers of the Property.

21.     At all times relevant Continental Title was the escrow agent and closing company for purchase of the Property.

22.     At all times relevant Continental Title, FNBO, Platinum Realty and Sylvia were in a fiduciary relationship with plaintiffs and obtained confidential, personal and private information about plaintiffs related their purchase of the Property.  All defendants had a legal and fiduciary duty to maintain the confidentiality of plaintiffs' nonpublic information (hereinafter "NPI") and to exercise the utmost care to ensure no persons or entities obtained plaintiffs' NPI.

23.     On or about February 16, 2016, Brenda Williams of Continental Title sent Sylvia an unencrypted email containing the HUD-1 settlement statement and the instructions for wiring the funds due and owing on the Property.

24.     At all times relevant Continental Title and Brenda Williams had the means and ability to encrypt the email Ms. Williams sent to Sylvia.   If Continental Title and/or Ms. Williams had encrypted the email Ms. Williams email sent to Sylvia all of the damages sustained by plaintiffs as alleged herein would have been avoided.

25.     On or about February 16, 2016, an unknown person intercepted Ms. Williams' unencrypted email to Sylvia, changed the wiring instructions to an unknown person's bank account, created an email address almost identical to Ms. Williams' Continental Title email address, pasted Ms. Williams' signature block and Continental Title's logo into the email and sent the fabricated email and wiring instructions to Sylvia in Missouri.

26.     On or about February 16, 2016, Sylvia received the hacker's fabricated email and, without reading the fabricated wiring instructions, forwarded it to plaintiffs in Kansas. Sylvia represented to plaintiffs that the HUD-1 and the fraudulent wiring instructions attached to her email were from Continental Title and that they were true and accurate.

27.     If Sylvia and/or Platinum Realty had read the hacker's fabricated email address which purported to be Ms. Williams' email address and/or if Sylvia and/or Platinum Realty had read the fraudulent wiring instructions, they would have known that the wiring instructions were fraudulent and all of the damages sustained by plaintiffs as alleged herein would have been avoided.

28.     Plaintiffs were unware of and had no way of knowing that the email Sylvia sent them was not from Continental Title and had instead been intercepted and contained fraudulent wiring instructions.

29.     Believing Sylvia's representation that her email was from Continental Title, plaintiffs sent Sylvia's email and the fabricated wiring instructions to FNBO and asked the bank to follow Sylvia's wiring instructions.

30.     Upon receipt of Sylvia's email from plaintiffs and without taking any steps to verify the accuracy of the wiring instructions, First National Bank wired the settlement funds ($196,622.76) from Plaintiffs' Account to the hacker's account at Citi Bank (Account Number 499 813 7913) (hereinafter the "Fraudulent Transfer").

31.     The Fraudulent Transfer was facilitated by FNBO's negligent, reckless and/or intentional failure to maintain and/or exercise adequate security and monitoring procedures of Plaintiffs' Account and FNBO's negligent, reckless and/or intentional failure to abide by its contractual, statutory, common law and/or fiduciary obligations to plaintiffs.

32.     Upon FNBO's receipt of Sylvia's email, FNBO failed:

a.      to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to alert plaintiffs about the Fraudulent Transfer;

b.      to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to obtain the verified approval of plaintiffs, prior to First National Bank facilitating the Fraudulent Transfer; and

6

c.    to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to require that plaintiffs answer security questions or otherwise verify, authenticate, or confirm plaintiffs' identity, as well as verify, authenticate, or confirm that plaintiffs had made and/or authorized the Fraudulent Transfer.

33.    FNBO knew or should have known that the wiring instructions were unauthorized, suspicious, forged, fraudulent, wrongful, did not conform with FNBO's policies, regulations, and rules, or the commercially reasonable or commercially accepted security procedures of the banking industry.

34.    Plaintiffs and their attorneys have requested information and documents relating to the Fraudulent Transfer from FNBO but FNBO and its attorneys have refused to provide the requested information and documents relating to the Fraudulent Transfer.

35.    The Fraudulent Transfer was made without plaintiffs' knowledge or consent, and occurred as a proximate result of Continental Title, Platinum Realty, FNBO and/or Sylvia's misconduct, recklessness, negligence, unlawful actions, wrongful conduct, intentional conduct, breach of fiduciary duties, and/or failure to comply with commercially reasonable and/or commercially accepted security procedures.

36.    FNBO has failed to conduct a timely and reasonable investigation into the Fraudulent Transfer and has failed to reimburse plaintiffs for the Fraudulent Transfer.

37.    All defendants knew years before the Fraudulent Transfer that the same or similar cyber fraud described herein had been perpetrated on numerous innocent consumers throughout the United States.    Despite such knowledge and despite

defendants' realization of the imminent dangers of the cyber fraud, defendants recklessly disregarded the known and probable consequences.

## COUNT I – VIOLATIONS OF ELECTRONIC FUNDS TRANSFER ACT
### (Against First National Bank)

Plaintiffs, for Count I of their cause of action against FNBO, state and allege as follows:

38.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 37 of this Complaint as though fully set forth herein.

39.     Plaintiffs are both "consumers" as that term is used in 15 U.S.C. § 1693(a)(5) of the Electronic Funds Transfer Act ("EFTA").

40.     FNBO is a "financial institution" as that term is used in 15 U.S.C. § 1693(a)(8).

41.     Plaintiffs' Account is an "account" as that term is used in 15 U.S.C. § 1693(a)(2).

42.     The Fraudulent Transfer is an "unauthorized electronic transfer" as that phrase is used and defined in 15 U.S.C. § 1693(a)(11).

43.     FNBO violated its obligations under the EFTA by failing to provide plaintiffs with the disclosures and notices required under that Act and under Regulation E.

44.     FNBO violated its obligations under the EFTA by failing to perform a good faith investigation into the Fraudulent Transfer and by failing to provide plaintiffs with the results of the investigation within ten (10) business days in violation of 15 U.S.C. § 1693f(a).

45.     FNBO violated its obligations under the EFTA by failing to correct the account errors caused by the Fraudulent Transfer in violation of 15 U.S.C. § 1693f(b).

46.     FNBO unlawfully, recklessly, negligently, and/or willfully denied plaintiffs the protections set forth in Regulation E including, but not limited to, the limitations on consumer liability set forth in 12 C.F.R. § 205.6.

47.     Pursuant to 15 U.S.C. § 1693g, plaintiffs' maximum liability for the Fraudulent Transfer is Fifty Dollars ($50.00).

48.     FNBO has demanded payment of $196,622.76 plus interest from plaintiffs as a result of the Fraudulent Transfer which is well in excess of plaintiffs' maximum liability and which demand is in violation of 15 U.S.C. § 1693g.

49.     FNBO has and continues to willfully violate the EFTA and Regulation E and FNBO is liable to plaintiffs for a declaratory judgment that FNBO's conduct violated the EFTA.

50.     As a direct and proximate result of FNBO's violations of the EFTA, plaintiffs sustained damages in excess of $200,000.00 and FNBO is liable to plaintiffs for the full amount of statutory and actual damages along with the attorneys' fees and the costs of this litigation, as well as such further relief as may be permitted by law.

WHEREFORE, plaintiffs pray for Judgment on Count I of their claim against FNBO for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by FNBO's violations of the EFTA; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of FNBO's violation of the EFTA; for their costs, expenses and attorney's fees in

bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT II – NEGLIGENCE – GROSS NEGLIGENCE
## (Against First National Bank)

Plaintiffs, for Count II of their cause of action against FNBO, state and allege as follows:

51.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through  50 of this Complaint as though fully set forth herein.

52.    FNBO owed a duty to plaintiffs to use reasonable care in obtaining, reading, analyzing, verifying and using the wiring instructions and in wiring money from Plaintiffs' Account for purchase of the Property.

53.    FNBO was careless, negligent and/or grossly negligent in several material respects including but not limited to:

a.    failing to observe that the wiring instructions were fabricated;

b.    failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to alert the plaintiffs about the Fraudulent Transfer;

c.    failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to obtain the verified approval of plaintiffs, prior to FNBO facilitating the Fraudulent Transfer; and

d.    failing to abide by its own policies and procedures, or to adopt and implement commercially reasonable and commercially accepted security procedures to require that plaintiffs answer security questions or otherwise verify, authenticate, or confirm plaintiffs'

identity, as well as verify, authenticate, or confirm that plaintiffs had made and/or authorized the Fraudulent Transfer.

e.     wiring plaintiffs' funds to an unknown person for purchase of the Property without plaintiffs' knowledge or consent.

54.     As a direct and proximate result of FNBO's negligence and gross negligence, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count II of their claim against FNBO for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by FNBO's negligence and/or gross negligence; for punitive damages as warranted by the evidence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of FNBO's negligence and/or gross negligence; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT III – UNJUST ENRICHMENT
### (Against First National Bank)

Plaintiffs, for Count III of their cause of action against FNBO, state and allege as follows:

55.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 54 of this Complaint as though fully set forth herein.

56.     FNBO has benefitted from plaintiffs establishing and maintaining Plaintiffs' Account.

57.    FNBO has benefitted from the proceeds derived from the alleged obligations caused by the Fraudulent Transfer by requiring plaintiffs to make payments to FNBO for the amounts wrongfully and fraudulently taken through the Fraudulent Transfer, including alleged principal, interest and late payments.

58.    FNBO has and will benefit from its demand upon plaintiffs for the alleged obligations caused by the Fraudulent Transfer.

59.    FNBO has failed and refused and continues to fail and refuse to acknowledge that plaintiffs have no liability to First National for the amounts wrongfully and fraudulently taken through the Fraudulent Transfer.

60.    FNBO should not benefit from the aforementioned proceeds derived from the alleged obligations caused by the Fraudulent Transfer.

61.    FNBO will continue to benefit through the alleged obligations caused by the Fraudulent Transfer, which presents circumstances which would make it unjust to permit First National to benefit from the alleged obligations caused by Fraudulent Transfer.

62.    FNBO has been unjustly enriched and injustice can only be avoided by ordering payment for damages by FNBO to plaintiffs for the full amount of statutory and actual damages, along with the attorneys' fees and the costs of litigation, as well as such further relief as may be permitted by law.

63.    As a direct and proximate result of FNBO's wrongful conduct, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count III of their claim against FNBO for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees

and costs plaintiffs have incurred attempting to mitigate the damages caused by FNBO's unjust enrichment; for punitive damages as warranted by the evidence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of FNBO's unjust enrichment; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## COUNT IV – NEGLIGENCE – GROSS NEGLIGENCE
### (Against Continental Title)

Plaintiffs, for Count IV of their cause of action against Continental Title, state and allege as follows:

64.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 63 of this Complaint as though fully set forth herein.

65.    For years prior to the cyber fraud and Fraudulent Transfer described herein, Continental Title was a member of the American Land Title Association ("ALTA") which is the national trade association and voice of the abstract and title insurance industry.

66.    For years prior to the cyber fraud and Fraudulent Transfer described herein, Continental Title received from ALTA and others newsletters, emails, alerts, warnings, documents and other materials describing the same or similar cyber fraud described herein and how to prevent the cyber fraud described herein by among other things ensuring that all emails from Continental Title containing NPI were encrypted before being sent to customers, buyers, sellers, real estate agents, banks and others involved in the purchase and/or sale of real property.

67.     Continental Title owed a duty to plaintiffs to use reasonable care in obtaining, sending and disclosing plaintiffs' personal information, plaintiffs' banking information, plaintiffs' NPI and other information relating to the purchase of the Property.

68.     Continental Title was careless, negligent and grossly negligent by sending an unencrypted email to Sylvia with the HUD-1 and wiring instructions.

69.     Continental Title's failure to encrypt the email it sent to Sylvia allowed a hacker to intercept the email and fabricate the wiring instructions which caused the Fraudulent Transfer.

70.     As a direct and proximate result of Continental Title's negligence and gross negligence, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count IV of their claim against Continental Title for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by Continental Title's negligence and gross negligence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of Continental Title's negligence and gross negligence; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

### COUNT V – VIOLATIONS OF THE KANSAS CONSUMER PROTECTION ACT
### (Against Continental Title)

Plaintiffs, for Count V of their cause of action against Continental Title, state and allege as follows:

71.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 70 of this Complaint as though fully set forth herein.

72.     Plaintiffs are "consumers" within the meaning of the Kansas Consumer Protection Act, K.S.A. § 50-623, *et seq.* (hereinafter "KCPA").

73.     Continental Title is a "supplier" within the meaning of the KCPA.

74.     The "services" Continental Titled provided to plaintiffs are encompassed within the meaning of the KCPA.

75.     Continental Title held itself out to plaintiffs as "providing outstanding search, examination, and closing services for the real estate industry."  It represented to plaintiffs that it focused on "security with each and every transaction."

76.     Continental Title represented to plaintiffs that all information plaintiffs provided to it would be kept confidential, secured and would not be disclosed to any persons or entities without plaintiffs' permission.

77.     Continental Title's violated the KCPA and engaged in deceptive acts and practices in connection with a consumer transaction which include but are not limited to the following:

a.     Failing to inform plaintiffs that the information plaintiffs provided to Continental Title would not be kept confidential, secured, encrypted and would not disclosed to any persons or entities without plaintiffs' permission.

b.     Representing to plaintiffs that Continental Title would ensure all information plaintiffs provided to Continental Title would be kept confidential, secure, encrypted and not disclosed to any persons or entities without plaintiffs' permission.

15

c.    Misleading plaintiffs about its practices and abilities of sending encrypted communications containing plaintiffs' confidential information.

d.    Failing to disclose material facts to plaintiffs about Continental Title's practice of not encrypting emails containing plaintiffs' confidential and personal information.

78.    The aforesaid acts and omissions constitute deceptive acts and practices in violation of the KCPA.

79.    As a direct and proximate result of Continental Title's violations of the KCPA, plaintiffs suffered damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for judgment on Count V of their cause of action against Continental Title for a sum to be determined by the Court in accordance with the KCPA; for their costs, expenses and attorneys' fees in bringing this action as provided for in the KCPA; for civil penalties as provided for in the KCPA; and for such other relief as plaintiffs may be entitled to by law or as the Court deems just and proper.

## COUNT VI – NEGLIGENCE – GROSS NEGLIGENCE
### (Against Platinum Realty and Kathryn Sylvia Coleman)

Plaintiffs, for Count VI of their cause of action against Platinum Realty and Sylvia, state and allege as follows:

80.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 79 of this Complaint as though fully set forth herein.

81.    For years prior to the cyber fraud and Fraudulent Transfer described herein, Platinum Realty and Sylvia were members of the National Association of Realtors ("NAR") which is the national trade association and voice of real estate brokers and real estate agents in the United States.

16

82.     For years prior to the cyber fraud and Fraudulent Transfer described herein, Platinum Realty and Sylvia received from NAR and others newsletters, emails, alerts, warnings, documents and other materials describing the same or similar cyber fraud described herein and how to prevent the cyber fraud described herein by among other things: (a) never using an unsecured email address such as a Yahoo.com email address; (b) never accepting an unencrypted email containing wiring instructions; and (c) never forwarding or sending an unencrypted email containing wiring instructions.

83.     Platinum Realty and Sylvia owed a duty to plaintiffs to use reasonable care in obtaining, evaluating, reading, sending and disclosing plaintiffs' personal information, plaintiffs' banking information, plaintiffs' NPI and other information relating to the purchase of the Property.

84.     Platinum Realty and Sylvia were careless, negligent and grossly negligent in several material respects including but not limited to:

a.      Using an unsecured Yahoo email address to send and receive plaintiffs' confidential financial, banking and personal information.

b.      Failing to read the fabricated wiring instructions to ensure they were accurate which would have prevented the Fraudulent Transfer.

c.      Forwarding the email to plaintiffs without encrypting it and without ensuring the wiring instructions were accurate and truthful.

d.      Representing to plaintiffs that the wiring instructions were from Continental Title and were true and accurate.

85.     As a direct and proximate result of Platinum Realty and Sylvia's negligence

17

and gross negligence, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count VI of their claim against Platinum Realty and Sylvia for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by Platinum Realty and Sylvia's negligence and gross negligence; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of Platinum Realty and Sylvia's negligence and gross negligence; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

## COUNT VII – NEGLIGENT MISREPRESENTATION
### (Against Platinum Realty and Sylvia)

Plaintiffs, for Count VII of their causes of action against Platinum Realty and Sylvia, state and allege as follows:

86.     Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 85 of this Complaint as though fully set forth herein.

87.     Platinum Realty and Sylvia owed a duty to plaintiffs to use reasonable care in obtaining, receiving, evaluating, reading, sending and disclosing material information to plaintiffs about where to wire the funds for the purchase of the Property.

88.     Platinum Realty and Sylvia, in the course of their businesses, professions and employment in which they had a pecuniary interest, negligently supplied false and/or incorrect information to plaintiffs about where to wire the funds for purchasing the Property.

18

89.     Plaintiffs justifiably relied on Platinum Realty and Sylvia's negligent misrepresentations and/or false information about where to wire the funds for purchase of the Property.

90.     Plaintiffs were within the group of persons for whose benefit and guidance Platinum Realty and Sylvia supplied information about where to wire the funds to purchase the Property and Platinum Realty and Sylvia intended plaintiffs to rely on the information they sent plaintiffs about where to wire the funds to purchase the Property.

91.     Platinum Realty and Sylvia breached their duty of care to plaintiffs by negligently supplying false and/or incorrect information to plaintiffs about where to wire the funds for purchase of the Property.

92.     If plaintiffs had been apprised of all material information about where to wire the funds to purchase the Property, the Fraudulent Transfer would have been prevented.

93.     As a direct and proximate result of Platinum Realty and Sylvia's negligent misrepresentations, plaintiffs sustained damages in excess of $200,000.00.

WHEREFORE, plaintiffs pray for Judgment on Count VII of their claim against Platinum Realty and Sylvia for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages sustained because of Platinum Realty and Sylvia's negligent misrepresentations; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of Platinum Realty and Sylvia's negligent misrepresentations; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and

proper.

## COUNT VIII – BREACH OF FIDUCIARY DUTY
### (Against All Defendants)

Plaintiffs, for Count VIII of their cause of action against all defendants, state and allege as follows:

94.   Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95.   Plaintiffs placed their trust and confidence in all defendants based upon defendants' expertise, experience and representations.

96.   Defendants knew that plaintiffs were placing their trust and confidence in them based upon their expertise, experience and representations.

97.   Defendants had a duty to establish security protocols and procedures to protect the safety and security of plaintiffs' NPI and to prevent the Fraudulent Transfer.

98.   Plaintiffs relied on defendants to maintain and establish security protocols and procedures to protect the safety and security of plaintiffs' NPI and to prevent the Fraudulent Transfer.

99.   The trust and confidence placed upon defendants by plaintiffs created a fiduciary relationship between defendants and plaintiffs.

100.   As a result of the fiduciary relationship between defendants and plaintiffs, defendants owed plaintiffs a fiduciary duty to maintain and protect plaintiffs' NPI and to prevent the Fraudulent Transfer.

101.   Defendants breached their fiduciary duties to plaintiffs by failing to establish and maintain commercially accepted security protocols and procedures to prevent the

Fraudulent Transfer which directly caused or directly contributed to cause the Fraudulent Transfer.

102.    Defendants breached their fiduciary duties to plaintiffs by refusing to reimburse plaintiffs for the amount wrongfully and fraudulently taken from Plaintiffs' Account.

WHEREFORE, plaintiffs pray for Judgment on Count VIII of their claims against all defendants for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for punitive damages warranted by the evidence; for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages sustained because of defendants' breaches of their respective fiduciary duties; for prejudgment interest on the $200,000.00 plaintiffs lost as a result of defendants' breaches of their respective fiduciary duties; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as he may be entitled to by law or as the Court deems just and proper.

### COUNT IX -VIOLATIONS OF UNIFORM COMMERCIAL CODE ARTICLE 4A
### (Against First National Bank)

Plaintiffs, for Count IX of their cause of action against FNBO, state and allege as follows:

103.    Plaintiffs incorporate by reference the allegations set forth in paragraphs 1 through 102 of this Complaint as though fully set forth herein.

104.    FNBO failed to establish, implement, and/or apply, as required by the Uniform Commercial Code, as adopted in Kansas ("UCC"), Article 4A, a security procedure that was a commercially reasonable and/or commercially acceptable method against unauthorized payment orders or unauthorized electronic transactions.

21

105.    FNBO of Omaha accepted an unsecured and unencrypted e-mail chain with fraudulent wiring instructions from Plaintiffs and construed the email as a payment order causing FNBO to be liable for the loss of funds under UCC §§ 4A-202, 203 and K.S.A. § 84-4a-101, et. seq. (hereinafter collectively "UCC Article 4A").

106.    Pursuant to UCC Article 4A, FNBO is liable to plaintiffs for the unauthorized and unverified payment order or unauthorized electronic transfer of funds.

107.    The Fraudulent Transfer was not authorized by the Plaintiffs, nor initiated by the Plaintiffs or their agent who had access to confidential security information, nor by a person who obtained that confidential security information from a source controlled by the Plaintiffs.

108.    FNBO failed to take reasonable measures to authenticate or verify the accuracy of the email request to wire funds even though the email request breached FNBO's advertised policy of safeguarding customer monies and was also in violation of a commercially reasonable security measure.

109.    FNBO's did not have a written agreement with Plaintiffs defining an acceptable security procedure causing it to be liable for the loss of funds.  FNBO failed to adopt and implement or follow a security procedure to protect against wrongful, unauthorized and/or fraudulent money Transfer.

110.    Alternatively, if there was an agreement defining a security procedure, FNBO failed to comply with commercially reasonable and/or commercially accepted security procedures when it initiated a funds transfer, by among other things:

a.      failing to confirm the identify of any of the people who created the emails;

22

b.      failing to require a reasonable method of instigating a funds transfer from the plaintiffs;

c.      failing to notice the beneficiary of the funds was an unknown entity in New York although FNBO knew the funds were for a local real estate transaction and that funds were due at a local entity;

d.      failing to verify and confirm the transaction with plaintiffs and Continental Title;

e.      failing to require an alternative method of requesting the wire transfer to instigate the wire transfer;

f.      failing to exercise reasonable care when approving the unencrypted and unsecured email chain as a method of initiating the transfer of funds;

g.      failing to exercise reasonable care when approving the fraudulent wiring instructions;

h.      approving an email chain to initiate a fraudulent wire transfer of approximately $200,000 which is not a commonly accepted practice in the industry;

i.      failing to properly investigate the wrongful and unauthorized Fraudulent Transfer;

j.      failing to verify the accuracy of the email chain; and

h.      violating their duty of good faith in accepting an email chain as a payment order and initiating a funds transfer based on the payment order.

111.    As a direct and proximate result of FNBO's violations of UCC Article 4A, plaintiffs sustained damages in excess of $200,000 and FNBO is liable to plaintiffs for the

full amount of statutory and actual damages along with the attorneys' fees and costs of this litigation, as well as such further relief as committed by law.

WHEREFORE, plaintiffs pray for Judgment on Count IX of their claim against FNBO for a sum in excess of Seventy Five Thousand Dollars ($75,000.00); for the attorney's fees and costs plaintiffs have incurred attempting to mitigate the damages caused by FNBO's violations of UCC Article 4A; for prejudgment interest on the $200,000 plaintiffs lost as a result of FNBO's violation of Article 4A; for their costs, expenses and attorney's fees in bringing this action; and for such other relief as they may be entitled to by law or as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby request a trial by jury in the above-captioned case.

HAMILTON LAW FIRM LLC


By:/s/ Patrick A. Hamilton
Patrick A. Hamilton - KS#16154
13420 Santa Fe Trail Drive
Lenexa, Kansas 66215
PHONE: (913) 888-7100
FAX: (913) 888-7388
patrick@lenexalaw.com
ATTORNEY FOR PLAINTIFFS

## <u>CERTIFICATE OF MAILING</u>

I hereby certify that the foregoing document was filed with the Court' CM/ECF system on this 26th day of January, 2017, which will send copies of the same to all parties of record.

John T. Coghlan
Ryan Edward Shaw
Lathrop & Gage, LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618
ATTORNEYS FOR DEFENDANT
CONTINENTAL TITLE HOLDING COMPANY, INC.

Diane Hastings Lewis
Brown & Ruprecht, PC
2323 Grand Blvd., Suite 1100
Kansas City, MO 64108
ATTORNEYS FOR PLATINUM REALTY, LLC and
KATHRYN SYLVIA COLEMAN

and

Matthew W. Geary
Amanda Pennington Ketchum
DYSART TAYLOR COTTER McMONIGLE & MONTEMORE, P.C.
4420 Madison Avenue
Kansas City, MO 64111
ATTORNEYS FOR DEFENDANT FIRST NATIONAL BANK OF OMAHA, INC.

By:/s/ Patrick A. Hamilton
Attorney for Plaintiffs