IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JERRY BAIN and JENNIFER BAIN,                )
                                             )
                    Plaintiffs,              )
                                             )
v.                                           )   Case No. 16-2326-JWL
                                             )
PLATINUM REALTY, LLC and                     )
KATHRYN SYLVIA COLEMAN,                      )
                                             )
                    Defendants.              )
                                             )
_____)

## MEMORANDUM AND ORDER

This matter comes before the Court on defendants' motion for summary judgment (Doc. # 88). For the reasons set forth below, the motion is **granted in part and denied in part**. The motion is granted as unopposed with respect to plaintiffs' claims of breach of fiduciary duty and negligence and their claim for punitive damages, and judgment is awarded to defendants on those claims. The motion is denied with respect to plaintiffs' claim of negligent misrepresentation.

### I.     Background

This case arises from plaintiffs' purchase of a house. Defendant Kathryn Sylvia Coleman (hereafter referred to as "Ms. Sylvia") acted as the sellers' real estate agent, and she was employed by defendant Platinum Realty, LLC ("Platinum"). The title company

for the transaction was Continental Title Company ("CTC"). Prior to the closing of the transaction, plaintiffs had their bank wire the purchase amount to a particular bank account owned not by the sellers, but by some unknown party, and the funds were never recovered. Plaintiffs had acted pursuant to wiring instructions attached to an email to plaintiff Jerry Bain's email account purportedly sent from Ms. Sylvia's email account. In this suit, plaintiffs contend that the unknown party (referred to by the parties as "the hacker") intercepted an email from CTC to Ms. Sylvia that contained the intended wiring instructions, changed the wiring instructions, created an email address similar to the CTC address, and sent the changed wiring instructions to Ms. Sylvia by email, who then forwarded those instructions to Mr. Bain. Plaintiffs seek to recover damages in the amount of $196,622.67, the amount wired to the wrong account. By the pretrial order, plaintiffs assert claims against Ms. Sylvia and Platinum for breach of fiduciary duty, negligence, and negligent misrepresentation.[1]

## II.   Summary Judgment Standards

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine dispute as to any material fact" and that it is "entitled to a judgment as a

---

[1] The Court exercises supplemental jurisdiction over these claims pursuant to 28 U.S.C. § 1367. Plaintiffs originally asserted claims also against CTC and their bank, including a claim under federal law that permitted this Court to exercise original jurisdiction, but plaintiffs subsequently dismissed the claims against those two defendants, leaving only the claims against Ms. Sylvia and Platinum.

matter of law." Fed. R. Civ. P. 56(a). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Burke v. Utah Transit Auth. & Local 382*, 462 F.3d 1253, 1258 (10th Cir. 2006). An issue of fact is "genuine" if "the evidence allows a reasonable jury to resolve the issue either way." *Haynes v. Level 3 Communications, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006). A fact is "material" when "it is essential to the proper disposition of the claim." *Id*.

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant may not simply rest upon the pleadings but must "bring forward specific facts showing a genuine issue for trial as to those dispositive matters for which he or she carries the burden of proof." *Garrison v. Gambro*, Inc., 428 F.3d 933, 935 (10th Cir. 2005). To accomplish this, sufficient evidence pertinent to the material issue "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J.*

*Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

### III.  Abandoned Claims

By the instant motion, defendants seek summary judgment on all claims against them. In their response, plaintiffs have not addressed defendants' arguments with respect to the claims for breach of fiduciary duty, for general negligence, and for punitive damages. Indeed, plaintiffs' brief does not refer to those claims at all. Accordingly, plaintiffs have abandoned any such claims, and the Court grants defendants' motion for summary judgment on those claims as unopposed. *See Maestas v. Segura*, 416 F.3d 1182, 1190 n.9 (10th Cir. 2005) (party appeared to abandon claim by failing to address it in its brief); *Hinsdale v. City of Liberal, Kan.*, 19 F. App'x 749, 768-69 (10th Cir. 2001) (unpub. op.) (affirming district court's ruling that plaintiff abandoned claim by failing to address it in response to motion for summary judgment) (citing *Coffey v. Healthtrust, Inc.*, 955 F.2d 1388, 1393 (10th Cir. 1992)).

### IV.  Negligent Misrepresentation

#### A.  *Representation to Plaintiffs*

Plaintiffs assert a claim against defendants for negligent misrepresentation. According to the pretrial order, plaintiffs contend that Ms. Sylvia negligently supplied false information to plaintiffs "about where to wire the funds" for the purchase of the house. In that regard, plaintiffs argue that in sending the incorrect wiring instructions to Mr. Bain, Ms. Sylvia negligently represented that those instructions were correct.

Defendants first seek summary judgment on this claim on the basis of their argument that Ms. Sylvia never made such a representation to plaintiffs. Defendants concede that Ms. Sylvia received the fake wiring instructions and attempted to forward them to Mr. Bain. That email (sent at 11:48 a.m. on February 23, 2016), however, was sent not to Mr. Bain's correct email address, but was sent to a very similar address, presumably created by the hacker, from which Ms. Sylvia had received a prior communication. Mr. Bain received the fake wiring instructions in an email sent at 11:54 a.m. on February 23, 2016, which on its face appears to have come from Ms. Sylvia's actual email address. Ms. Sylvia denies that she sent the 11:54 email that Mr. Bain actually received. Defendants thus argue that the hacker sent the fake wiring instructions to Mr. Bain, and that because Ms. Sylvia's email with the fake instructions went elsewhere, she never actually sent the fake instructions to Mr. Bain—which would mean that she did not make any representation to plaintiffs concerning where the money should be wired, and thus cannot be liable for negligent misrepresentation.

The Court is unable to resolve this issue as a matter of law, however, as there is at least some evidence that Ms. Sylvia sent the 11:54 email to Mr. Bain. Most significant

5

is the fact that the email came from Ms. Sylvia's actual address, from which she had previously communicated with Mr. Bain. Ms. Sylvia denies having sent the email, but the use of her actual address—while fake email addresses were employed to impersonate CTC and Mr. Bain—provides evidence in plaintiffs' favor. The credibility of Ms. Sylvia's denial thus becomes a matter for the jury to decide. Other evidence also supports plaintiffs' claim. For instance, Mr. Bain testified that after discovery of the theft Ms. Sylvia admitted to him that the loss was her fault and could have been avoided if she had reviewed the fake wiring instructions, which admission could indicate her belief that she had sent the fake instructions to Mr. Bain. Mr. Bain also testified that after he received the fake wiring instructions, Ms. Sylvia confirmed to him on the telephone that the funds should be wired prior to closing. Mr. Bain also states that none of his emails to Ms. Sylvia's account were ever returned as undeliverable. Ms. Sylvia did intend to forward the incorrect wiring instructions to Mr. Bain (by the 11:48 email, which she admits sending). Before testifying at her deposition that emails could be recovered from her computer, Ms. Sylvia first testified that she had deleted any emails concerning the transactions, which could indicate an initial desire to conceal evidence. Finally, defendants do not dispute that Ms. Sylvia did nothing after the discovery of the theft to investigate with her email provider how the unauthorized use of her address could have occurred.

Defendants offer evidence and various arguments to counter plaintiffs' evidence. For instance, defendants argue that telephone records dispute Mr. Bain's claim that he

spoke with Ms. Sylvia after he received the wiring instructions. All evidence must be considered in plaintiffs' favor at this summary judgment stage, however, and it is for the jury to weigh any conflicting evidence. Because a question of fact remains for trial, the Court rejects this argument for summary judgment.

### B. *Positive Assertion*

For their second argument for summary judgment on this claim, defendants argue that the 11:54 email, by which the fake wiring instructions were forwarded to plaintiffs, did not contain any positive assertion of fact. That email stated:

> Jerry, see attached. Once the wire is sent kindly forward me a copy of the confirmation slip for my file.
>
> Thank you,
> Kathy Sylvia
> Platinum Realty

Defendants argue that, assuming Ms. Sylvia sent this email, she merely forwarded the wiring instructions without making any particular assertion concerning those instructions. Defendants rely solely on a California case, *OCM Principal Opportunities Fund v. CIBC World Markets Corp.*, 68 Cal. Rptr. 3d 828 (Cal. Ct. App. 2007), in which the court stated that, under California law, negligent misrepresentation requires a "positive assertion" and that an implied assertion or representation is not enough. *See id.* at 847.

Kansas law governs the claim in this case, however, and Kansas has adopted Section 552 of the Restatement with respect to this tort. *See Mahler v. Keenan Real*

7

*Estate, Inc.*, 255 Kan. 593, 604-05 (1994).[2] By the terms of Section 552, one may be liable for negligent misrepresentation if she "supplies false information" in particular circumstances. *See* Restatement (Second) of Torts § 552(1). The comments to the Restatement provide as follows:

> "Misrepresentation" is used in this Restatement to denote not only words spoken or written but also any other conduct that amounts to an assertion not in accordance with the truth. Thus, words or conduct asserting the existence of a fact constitute a misrepresentation if the fact does not exist.

*See id.* § 525 cmt. b; *see also id.* §§ 525 cmts. e-g (discussing certain implied representations), 527 (speaker liable for ambiguous representation if she is indifferent to how it will be understood), 529 (liability for misleadingly incomplete representation). In forwarding wiring instructions, Ms. Sylvia could only have intended that plaintiffs would use those instructions to purchase her clients' house. Moreover, the email's reference to "the attached" could also have referred to the forwarded email purportedly from CTC, which stated that the wire instructions were attached and were to be forwarded to the buyers. The jury must decide which facts Ms. Sylvia asserted in the 11:54 email, and the jury could reasonably find in this case that, in supplying wiring instructions to Mr. Bain, Ms. Sylvia was asserting that those were the correct instructions to be used by plaintiffs in that transaction. Accordingly, a question of fact remains for

---

[2]Both sides cite Kansas law for the elements of this tort, and thus they appear to agree that this claim is governed by the law of Kansas, where plaintiffs reside and thus suffered any financial harm. *See O'Bryan v. Wendy's Old Fashion Hamburgers of New York, Inc.*, 1997 WL 158296, at *4 n.2 (D. Kan. Mar. 19, 1997) (Lungstrum, J.).

8

trial, and the Court rejects this argument for summary judgment.

### C. *Justifiable Reliance*

Finally, defendants argue as a matter of law that plaintiffs did not justifiably rely on the alleged misrepresentation. *See id.* § 552 (liability for negligent misrepresentation for loss caused by the plaintiff's justifiable reliance on the false information). Defendants argue that Mr. Bain is an experienced real estate investor who should have recognized particular red flags in the emails he received. The Court concludes, however, that a reasonable jury could find that Mr. Bain acted reasonably and justifiably in assuming that the 11:54 email, which appeared to come from the actual email address of the sellers' agent, contained the correct wiring instructions. Because a question of fact remains for trial on this element of the tort, the Court rejects this final argument for summary judgment.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' motion for summary judgment (Doc. # 88) is hereby **granted in part and denied in part**. The motion is granted as unopposed with respect to plaintiffs' claims of breach of fiduciary duty and negligence and their claim for punitive damages, and judgment is awarded to defendants on those claims. The motion is denied with respect to plaintiffs' claim of negligent misrepresentation.

IT IS SO ORDERED.

9

Dated this 14th day of February, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
