IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| JERRY BAIN, ) <br> ) <br>               Plaintiff, ) <br> ) <br> v. ) <br> ) <br> PLATINUM REALTY, LLC and ) <br> KATHRYN SYLVIA COLEMAN, ) <br> ) <br>               Defendants. ) <br> ) <br> _____) | Case No. 16-2326-JWL |

## **MEMORANDUM AND ORDER**

This matter comes before the Court on defendants' posttrial motion for judgment as a matter of law or alternatively for remittitur (Doc. # 127). For the reasons set forth below, the Court **denies** the motion.

### **I.   Background**

In April 2018, the Court conducted a jury trial of the claim of negligent misrepresentation by plaintiff Jerry Bain against defendant Kathryn Sylvia Coleman ("Ms. Sylvia") and her realty agency, Platinum Realty, LLC. The case arose from a real estate transaction in which plaintiff was the buyer and Ms. Sylvia represented the seller. An unknown criminal inserted himself into the transaction through emails, including with the use of fake email accounts with names similar to the accounts used by participants in the transactions, with the result that plaintiff lost the purchase price of $196,622.67 when he

wired that amount to a bank account controlled by the criminal. Plaintiff alleged that Ms. Sylvia emailed the fake wiring instructions to him, thereby misrepresenting that those instructions were correct. The jury found against defendants, assigning 85 percent of the fault to Ms. Sylvia and 15 percent of the fault to plaintiff. Accordingly, the Court entered judgment against defendants in the amount of $167,129.27. By the present motion, plaintiff argues that the evidence was insufficient to support the jury's finding for plaintiff on his claim of negligent misrepresentation. Alternatively, plaintiff argues that the judgment should be reduced by the amount of settlement proceeds received by plaintiff from two other parties who were originally defendants in the case.

## II.     Governing Standards

Judgment as a matter of law under Fed. R. Civ. P. 50(b) is improper "unless the proof is all one way or so overwhelmingly preponderant in favor of the movant as to permit no other rational conclusion." *See Crumpacker v. Kansas Dept. of Human Resources*, 474 F.3d 747, 751 (10th Cir. 2007). In determining whether judgment as a matter of law is proper, a court may not weigh the evidence, consider the credibility of witnesses, or substitute its judgment for that of the jury. *See Sims v. Great American Life Ins. Co.,* 469 F.3d 870, 891 (10th Cir. 2006). In essence, a court must affirm a jury verdict if, viewing the record in the light most favorable to the nonmoving party, the record contains evidence upon which the jury could properly return a verdict for the nonmoving party. *See Bartee v. Michelin North America, Inc.*, 374 F.3d 906, 914 (10th Cir. 2004). Conversely, the court must enter judgment as a matter of law in favor of the moving party if "there is no legally

sufficient evidentiary basis for a reasonable jury to find for the issue against that party." *See Sims*, 469 F.3d at 891.

### III.  Sufficient Evidence of Negligent Misrepresentation

Defendants argue that the evidence was insufficient to support the jury's finding in favor of plaintiff on his claim of negligent misrepresentation.  The Court instructed the jury concerning the elements of that claim as follows:

> One who, in the course of his or her business, supplies false information for the guidance of another person in such other person's business transactions, is liable for damages suffered by such other person caused by reasonable reliance upon the false information if:
>
> 1.  The person supplying the false information failed to exercise reasonable care or competence in obtaining or communicating the false information; and,
>
> 2.  The person who relies upon the information is the person for whose benefit and guidance the information is supplied; and,
>
> 3.  The damages are suffered in a transaction that the person supplying the information intends to influence.

Defendants do not argue that this instruction was erroneous in any way; they argue instead that no reasonable jury could have found that these elements were satisfied based on the evidence.  The Court disagrees.

First, defendants argue that Ms. Sylvia did not send the email with the fake wiring instructions that plaintiff actually received, and that she therefore did not make the false representation to him.  The Court rejected this same argument at the summary judgment stage, as follows:

3

> Defendants concede that Ms. Sylvia received the fake wiring instructions and attempted to forward them to Mr. Bain. That email (sent at 11:48 a.m. on February 23, 2016), however, was sent not to Mr. Bain's correct email address, but was sent to a very similar address, presumably created by the hacker, from which Ms. Sylvia had received a prior communication. Mr. Bain received the fake wiring instructions in an email sent at 11:54 a.m. on February 23, 2016, which on its face appears to have come from Ms. Sylvia's actual email address. Ms. Sylvia denies that she sent the 11:54 email that Mr. Bain actually received. Defendants thus argue that the hacker sent the fake wiring instructions to Mr. Bain, and that because Ms. Sylvia's email with the fake instructions went elsewhere, she never actually sent the fake instructions to Mr. Bain—which would mean that she did not make any representation to plaintiffs concerning where the money should be wired, and thus cannot be liable for negligent misrepresentation.
>
> The Court is unable to resolve this issue as a matter of law, however, as there is at least some evidence that Ms. Sylvia sent the 11:54 email to Mr. Bain. Most significant is the fact that the email came from Ms. Sylvia's actual address, from which she had previously communicated with Mr. Bain. Ms. Sylvia denies having sent the email, but the use of her actual address—while fake email addresses were employed to impersonate CTC and Mr. Bain—provides evidence in plaintiffs' favor. The credibility of Ms. Sylvia's denial thus becomes a matter for the jury to decide. Other evidence also supports plaintiffs' claim. . . . Mr. Bain also testified that after he received the fake wiring instructions, Ms. Sylvia confirmed to him on the telephone that the funds should be wired prior to closing. Mr. Bain also states that none of his emails to Ms. Sylvia's account were ever returned as undeliverable. Ms. Sylvia did intend to forward the incorrect wiring instructions to Mr. Bain (by the 11:48 email, which she admits sending). Before testifying at her deposition that emails could be recovered from her computer, Ms. Sylvia first testified that she had deleted any emails concerning the transactions, which could indicate an initial desire to conceal evidence. Finally, defendants do not dispute that Ms. Sylvia did nothing after the discovery of the theft to investigate with her email provider how the unauthorized use of her address could have occurred.

*See Bain v. Platinum Realty, LLC*, 2018 WL 862770, at *2 (D. Kan. Feb. 14, 2018) (Lungstrum, J.). The jury heard this same evidence at trial. As at summary judgment, *see id.* at *3, defendants point to contrary evidence, such telephone records that do not show a call to Ms. Sylvia after the wiring instructions were sent. Again, however, the evidence

4

must be viewed in plaintiff's favor, and the jury was free to assess Ms. Sylvia's credibility and to reject her testimony that she did not send the email that bore her email address.[1]  The Court concludes that the evidence was sufficient to support a finding for plaintiff.

Second, defendants argue that the email with the fake wiring instructions did not contain any false assertion.  The Court also rejected this argument at summary judgment, noting that under the Restatement (which Kansas has adopted) the basis for a misrepresentation may be an implied assertion.  *See id.* at *3.  Defendants have not addressed that prior ruling in their present briefs.  In this case, the jury could reasonably have found that in supplying wiring instructions to plaintiff, Ms. Sylvia was asserting that those instructions were correct.  The Court therefore rejects this argument for judgment as a matter of law.

Third, defendants argue that the evidence was insufficient to show a lack of reasonable care by Ms. Sylvia in obtaining or communicating the fake wiring instructions.  Ms. Sylvia conceded in her testimony, however, that she did not confirm that she had the correct instructions (despite oddities in the instructions, such an incomplete out-of-the-area bank address) and that she had the responsibility to make sure that she sent accurate information to plaintiff.  The Court concludes that the jury could reasonably have concluded that Ms. Sylvia failed to act with reasonable care.[2]

---

[1] Ms. Sylvia conceded that the email also bore her usual signature block and end quote.

[2] Defendants note that plaintiff did not offer expert testimony to establish a duty as realtor going beyond that of ordinary care.  The Court's instructions, however, required only a breach of the duty of reasonable care and not some heightened duty, and the evidence Continued…

5

Finally, defendants argue that plaintiff, an experienced real estate investor, could not have relied reasonably on the misrepresentation as a matter of law. The Court disagrees; the evidence—including Ms. Sylvia's own testimony that it was reasonable for plaintiff to rely on information from her—was sufficient to allow a reasonable finding in plaintiff's favor on this element of the claim. Accordingly, the Court denies defendants' motion for judgment as a matter of law.

### IV. Offset for Settlement Proceeds

In the alternative, defendants argue that the judgment should be reduced to account for amounts received by plaintiff in settlements reached with two other entities that were originally defendants in this case. The Court rejected this same argument in ruling on motions in limine prior to trial, based on the ruling by the Kansas Supreme Court in *Glenn v. Fleming*, 240 Kan. 724 (1987). In *Glenn*, the plaintiff settled with four defendants and obtained a verdict against a fifth defendant, and the trial court (after reducing the verdict by the plaintiff's own fault) reduced the judgment to account for the amount of the settlements. *See id.* at 725. The supreme court held that the trial court had no authority to make that reduction because Kansas's statutory comparative fault scheme abolished joint and several liability among joint tortfeasors, and the remaining defendant had the opportunity (which he failed to use) to ask the jury to compare the fault of the settling defendants. *See id.* at 725-32. The straightforward application of *Glenn* in this case means

---

was sufficient to meet that standard. Defendants have not cited any authority to suggest that expert testimony was required in this case concerning the ordinary standard of care.

that the judgment here may not be reduced by the amounts of the settlements reached with the other parties, as defendants had the opportunity to and did compare those parties' fault at trial.[3]  Although the Court cited this case in making its limine ruling, defendants failed in their initial posttrial brief to address *Glenn*, which still represents good law. *See, e.g.*, *Adams v. Via Christi Reg. Med. Ctr.*, 270 Kan. 824, 833 (2001) (citing *Glenn* with approval).  In their reply brief, defendants have attempted to distinguish *Glenn*, arguing that the amount of damages was fixed in the present case.  *Glenn*, however, does not contain any suggestion that the rule is different in such a case.  Moreover, the key is that although the amount of total damages was undisputed, the allocation of fault to the settling defendants for those damages was not fixed.  Thus, in settling with those defendants, plaintiff bore the risk that the jury could assign even greater fault to them.  Contrary to defendants' argument, a settling plaintiff will not always receive a windfall; for instance, if the jury in this case had assigned most of the fault to the settling defendants and little fault to Ms. Sylvia, plaintiff would have failed to recover as much of his damages as he could have.  *Glenn* controls here, and the Court therefore denies defendants' alternative motion for remittitur.[4]

---

[3] The jury declined to assign any fault to those two parties.

[4] On the first day of trial, defendants moved (Doc. # 117) to amend the pretrial order to assert this defense of being allowed setoffs for the settlements.  The Court has permitted defendants to pursue that defense by this motion, and thus the motion to amend is **granted**, although it has rejected that defense as a matter of law herein.

IT IS THEREFORE ORDERED BY THE COURT THAT defendants' posttrial motion for judgment as a matter of law or for remittitur (Doc. # 127) is hereby **denied**.

IT IS SO ORDERED.

Dated this 25th day of June, 2018, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge
